IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BISHOP DISPLAY TECH LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TCL ELECTRONICS HOLDINGS LTD.;<br>TCL INDUSTRIES HOLDINGS CO., LTD.;<br>TCL COMMUNICATION LTD.; TCL<br>COMMUNICATION TECHNOLOGY<br>HOLDINGS LTD.; TCT MOBILE<br>INTERNATIONAL LTD.; HUIZHOU TCL<br>MOBILE COMMUNICATION CO. LTD.;<br>TCL MOBILE COMMUNICATION (HK)<br>CO., LTD.; TCL TECHNOLOGY GROUP<br>CORP.; WUHAN CHINA STAR<br>OPTOELECTRONICS<br>SEMICONDUCTOR DISPLAY<br>TECHNOLOGY CO., LTD.; CHINA<br>DISPLAY OPTOELECTRONICS<br>TECHNOLOGY (HUIZHOU) CO., LTD.;<br>AND TCL CHINA STAR<br>OPTOELECTRONICS TECHNOLOGY<br>CO., LTD.,<br><br>    Defendants. | § <br>§ <br>§ <br>§  **C.A. No. 2:26-cv-257**<br>§ <br>§  **JURY TRIAL DEMANDED**<br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bishop Display Tech LLC ("Bishop" or "Plaintiff") files this Complaint against

TCL Electronics Holdings Ltd. ("TCL Electronics"), TCL Industries Holdings Co., Ltd. ("TCL

Industries"), TCL Communication Ltd. ("TCL Communication"), TCL Communication

Technology Holdings Ltd. ("TCL Communication Tech."), TCT Mobile International Ltd. ("TCT

Mobile"), Huizhou TCL Mobile Communication Co. Ltd. ("Huizhou TCL Mobile"), TCL Mobile

Communication (HK) Co., Ltd. ("TCL Mobile HK"), TCL Technology Group Corp. ("TCL

Technology"), Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd.

1

("Wuhan CSOT"), China Display Optoelectronics Technology (Huizhou) Co., Ltd. ("Huizhou CSOT"), and TCL China Star Optoelectronics Technology Co., Ltd. ("TCL CSOT"), (collectively "TCL" or "Defendants") for infringement of U.S. Patent No. 7,583,347 (the "'347 patent"), U.S. Patent No. 7,414,682 (the "'682 patent"), U.S. Patent No. 7,995,047 (the "'047 patent"), and U.S. Patent No. 8,093,830 (the "'830 patent") (collectively, the "Asserted Patents").

## THE PARTIES

1. Plaintiff is a Texas limited liability company with its principal place of business in the Eastern District of Texas.

2. <u>TCL CSOT, Wuhan CSOT, and Huizhou CSOT</u>. On information and belief, TCL CSOT is a display company organized under the laws of the People's Republic of China having a regular and established place of business at No. 9-2 Tangming Ave., Guangming New District, Shenzhen, Guangdong, 518132, China. On information and belief, TCL CSOT is a majority shareholder and/or the only shareholder of Wuhan CSOT, a display company organized under the laws of the People's Republic of China having a regular and established place of business at Room 305, Building C5, Optics Valley Biological Innovation Park, No. 666, Gaoxin Ave., Donghu New Technology Development Zone Wuhan, Hubei, 430077, China. On information and belief, TCL CSOT owns, directs, and controls Wuhan CSOT. On information and belief, TCL CSOT is a majority shareholder and/or the only shareholder of Huizhou CSOT, a display and/or LCM company organized under the laws of the People's Republic of China having a regular and established place of business at No. 1 Yaoli Road, Chenjiang Street, Zhongkai High-tech Development Zone, Huizhou, Guangdong Province, 516006, China. On information and belief, TCL CSOT owns, directs, and controls Huizhou CSOT. References herein to "CSOT" without a further modifier include TCL CSOT, Wuhan CSOT, and Huizhou CSOT. On information and

belief, CSOT makes, sells, offers to sell, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) for TCL display devices and third party display devices (e.g., Lenovo laptops, ViewSonic monitors) destined for the United States.

3. On information and belief, TCL CSOT America Corp. is a company organized under the laws of Delaware with its principal place of business at 2025 Gateway Pl. #430, San Jose, CA 95110. On information and belief, CSOT America is a wholly owned subsidiary of TCL CSOT. On information and belief, TCL CSOT America Corp. sells, offers to sell and/or imports accused products (e.g., CSOT TFT-LCD displays and/or LCMs) in the United States.

4. TCL Technology. On information and belief, TCL Technology is a corporation registered in China. On information and belief, TCL Technology's principal place of business is located at  TCL Technology Building, No. 17, Huifeng Third Road, Zhongkai High-Tech Development Zone, Huizhou, Guangdong, P.R. China 516001. On information and belief, TCL Technology owns, directs, and controls TCL CSOT and TCL Wuhan. On information and belief, TCL Technology operates as an alter ego and essentially the same company as all TCL companies, especially as to TCL display products (e.g., TVs, phones, tablets). *See, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id*. ("we create innovative display technologies and develop new production techniques for phones and TVs."); *see also id*. ("We … produce our own boards … . That is all to ensure consistent performance and quality.").

5. On information and belief, TCL Technology supplies relevant and/or infringing components (e.g., CSOT TFT-LCDs and LCMs) to TCL Electronics for TCL branded display

3

products (e.g., TVs, phones, and tablets) and other third parties that incorporate the accused CSOT TFT-LCDs and LCMs into their display products (e.g., TVs, phones, tablets). For example, according to TCL Electronics' 2024 Annual Report, "One of the five largest suppliers of the Group is a subsidiary of TCL Technology, which is a major panel supplier in the PRC." TCL Electronics's 2024 Annual Report at 98.

6.    TCL Electronics. On information and belief, TCL Electronics is a limited liability company incorporated in the Cayman Islands. The registered address of TCL Electronics is P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. TCL Electronics' principal place of business is located at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, Hong Kong. Upon information and belief, TCL Electronics is a wholly owned subsidiary of TCL Industries. On information and belief, TCL Industries owns, directs, and controls TCL Electronics.

7.    According to its 2024 Annual Report, "TCL Electronics is a world-leading consumer electronics company that covers display, innovative and internet businesses." TCL Electronics' 2024 Annual Report at 3. That business includes manufacturing display products, including TVs, phones, and/or tablets, and selling, offering to sell, and importing those display products in the United States. In its 2024 Annual Report, TCL Electronics stated that "the Group and its subsidiaries … were mainly involved in the manufacture and sale of television ('TV') sets, smartphones, smart connective devices, smart commercial display and smart home products … ." *Id.* at 144 (emphasis added).[1] And "[t]he Group continued to expand and deepen the coverage of key channels in multiple regions such as North America, Europe and Emerging Market, driving

---

[1] In its 2024 Annual Report, dated March 21, 2025, TCL Electronics refers to itself as the "Company." And it refers to the "Group" as "collectively the Company and its subsidiaries." *Id.* at 144.

TCL TV to rank among the top three in terms of shipment in nearly 20 countries around the world." *Id.* at 27.

8. Specific to the United States, TCL Electronics has previously sought to increase its market share and competitiveness of display products, including TVs, phones, and/or tablets, "through a series of effective localisation tactics." *Id.* at 32. For example, "the Group collaborated with influential local brands like NFL, integrating TCL brand with local culture and bringing North American consumers closer through sports marketing, which effectively increased brand awareness and reputation." *Id.* "The Group also proactively optimised channel layouts and product structure to better meet the diverse demand of North American consumers." *Id.* And "for market share in terms of retail sales volume, TCL TV maintained a top two position in the U.S." *Id.*

9. On information and belief, TCL Electronics has a global supply chain for selling and importing display products, including TVs, phones, and/or tablets in the United States. As stated in its 2024 Annual Report, "the Group will further optimise its global supply chain, logistics, and service systems to improve operational efficiency." *Id.* at 40. And TCL Electronics further stated "[a]dhering to a strategic direction prioritising efficiency, the Group continued to optimise its supply chain, logistics and service capabilities, and partner ecosystem through globalisation, enhancing its global operational capabilities, and improving operational efficiency. During the year, the Group's inventory turnover days was 65 days, down by 3 days year-on-year, demonstrating robust and comprehensive operational capabilities and financial strength, laying a solid foundation for the Group's sustainable development in the future." *Id.* at 27.

10. On information and belief, TTE Technology, Inc., d/b/a TCL North America ("TTE") is a Delaware corporation with its principal place of business at 189 Technology Drive, Irvine, California 92618. TTE's website, product literature, and product labels demonstrate that

TCL sells for importation, imports, offers for sale, and/or sells after importation accused display products (e.g., TVs, phones, and/or tablets) that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TTE is a wholly owned subsidiary of TCL Electronics. On information and belief, TCL Electronics owns, directs, and controls TTE. On information and belief, TTE sells, offers to sell and/or imports accused consumer display products (e.g., TCL TVs, phones, tablets) in the United States. *See, e.g.*, https://us.tcl.com/ (offers to sell and advertisements for accused TCL branded display products).

11.    TCL Communication Tech. On information and belief, TCL Communication Tech. is a limited liability company registered in the People's Republic of China, with its principal place of business located at 22/F, TCL Technology Building, No. 17, the Huifeng Third Road, Zhongkai Hi-Tech Development District, Huizhou City, Guangdong, PRC, 516006. On information and belief, TCL Communication makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, On information and belief, TCL Communication Tech. is a wholly owned subsidiary of TCL Electronics. On information and belief, TCL Electronics owns, directs, and controls TCL Communication Tech.

12.    TCL Communication. On information and belief, TCL Communication is a corporation duly organized and existing under the laws of China, having an address of 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCL Communication makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TCL Communication is a

6

wholly owned subsidiary of TCL Communication Tech. On information and belief, TCL Communication Tech. owns, directs, and controls TCL Communication.

13.     TCT Mobile. On information and belief, TCT Mobile is a corporation duly organized and existing under the laws of Hong Kong, and conducts business from its corporate headquarters at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCT Mobile makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TCT Mobile is a wholly owned subsidiary of TCL Communication Tech. On information and belief, TCL Communication Tech. owns, directs, and controls TCL Communication.

14.     On information and belief, TCT Mobile (US) Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 25 Edelman, Suite 200, Irvine, California, 92618 in Orange County. On information and belief, TCT Mobile (US) Inc. sells, offers to sell and/or imports accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs in the United States. On information and belief, TCT Mobile (US) Inc. is a wholly owned subsidiary, directly or indirectly, of TCT Mobile. On information and belief, TCT Mobile owns, directs, and controls TCT Mobile (US) Inc.

15.     Huizhou TCL Mobile. On information and belief, Huizhou TCL Mobile is a corporation duly organized and existing under the laws of the People's Republic of China, and conducts business from its corporate headquarters at 86 Hechang 7th West Road, Zhongkai Hi-Tech Development Zone, Huizhou, Guangdong 516006, China. On information and belief, Huizhou TCL Mobile makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On

information and belief, Huizhou TCL Mobile is a wholly owned subsidiary of TCL Communication Tech. On information and belief, TCL Communication Tech. owns, directs, and controls Huizhou TCL Mobile.

16.     TCL Mobile HK. On information and belief, TCL Mobile HK is a corporation duly organized and existing under the laws of Hong Kong, and conducts business from a principal place of business at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCL Mobile HK makes, sells for importation, imports, offers for sale, and/or sells after importation accused phones and tablets that contain accused CSOT TFT-LCDs and/or LCMs. On information and belief, TCL Mobile HK is a wholly owned subsidiary of Huizhou TCL Mobile. On information and belief, Huizhou TCL Mobile owns, directs, and controls TCL Mobile HK.

17.     TCL Industries. On information and belief, TCL Industries is a company registered in China. On information and belief, TCL Industries' principal place of business is located at 9/F, TCL Electronics Tower, Building D4, TCL International E City, 1001 Zhongshanyuan Road, Nanshan District, Shenzhen City, China. On information and belief, TCL Industries owns and controls, directly or indirectly, each of the other named Defendants.

18.     TCL Industries is the "ultimate holding company of the Company [TCL Electronics]." *Id.* at 144. As such, upon information and belief, TCL Industries controls or derives substantial revenue from the activities of TCL Electronics, including its manufacture of televisions, phones, and tablets for sale and importation into the United States. According to its own annual report, TCL Industries "focuses on the smart device business covering nearly all categories of smart consumer electronic products and services, ranging from displays, to smart appliances, innovative business and home Internet … ." TCL Industries 2023 Annual Report at 7.

The same annual report explains that "TCL Industries has been expanding its footprint in the international markets, creating a robust global supply chain system. With over 60,000 employees across Asia, Americas, Europe and Oceania … ." *Id.*

19.　　The 2023 Annual Report states that, "[a]s an active player in the display industry, TCL Industries continued to improve its smart display technologies for applications in smart home, smart life, smart security, smart education, smart conference room, smart energy consumption management, and more. TCL's high-end displays enable a more convenient and efficient living and working experience for consumers." *Id.* at 11.

20.　　On information and belief, each of the named Defendants are part of an interrelated group of companies that together comprise one of the world's largest manufacturers and/or distributors of televisions, phones, and TFT-LCDs/LCMs and one of the leading sellers of televisions and smartphones in the United States, including the TCL brands; these entities are therefore collectively referred to herein as "TCL." For example, TCL refers to itself and its interrelated companies as the "Group," such as in its 2023 Annual Report, describes itself as "a world-leading consumer electronics company." *See also, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id.* ("we create innovative display technologies and develop new production techniques for phones and TVs."); *see also id.* ("We … produce our own boards … . That is all to ensure consistent performance and quality.").

21.　　Defendants are engaged (including, as relevant, in the past) in making, using, selling, offering for sale, and/or importing, and/or inducing their respective subsidiaries, affiliates, distributors, suppliers, business partners retail partners, and customers in the making, using,

selling, offering for sale, and/or importing throughout the United States, including within this District, the following products accused of infringement (the "Accused Products"):

- CSOT thin-film transistor liquid crystal displays ("TFT-LCDs") for display products;

- CSOT liquid crystal modules comprising TFT-LCDs (collectively, "LCMs") for display products;

- Products comprising CSOT TFT-LCDs or LCMs;

- Products comprising TFT-LCDs; and

- Components of the foregoing.

22.    On information and belief, TCL Electronics and/or TCL Industries (as well as other named Defendants) direct and control TCL Technology, TCL CSOT, and Wuhan CSOT (and have controlled), as well as many other subsidiaries and affiliates, including the named Defendants. On information and belief, TCL Technology, TCL CSOT, and Wuhan CSOT are, and have been, agents of TCL Electronics and/or TCL Industries (as well as other named Defendants). On information and belief, these companies share the same offices, leadership, employees, and business. At the direction and control of TCL Electronics and/or TCL Industries (as well as other named Defendants), TCL Technology, TCL CSOT, and Wuhan CSOT makes (and has made) and supplies (and has supplied) TFT-LCDs and LCMs that are (and have been) incorporated into end user products by TCL Electronics and/or TCL Industries (as well as other named Defendants). *See, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id.* ("we create innovative display technologies and develop new production

10

techniques for phones and TVs."); *see also id*. ("We … produce our own boards … . That is all to ensure consistent performance and quality.").

23.     On information and belief, each of Defendants and other TCL companies are, and have been, agents of TCL Electronics and/or TCL Industries. For example, each of the Defendants and their subsidiaries use the same logo, further emphasizing that these companies are alter egos and/or agents of one another. All TCL entities, including the named Defendants and each of their respective affiliates, parents, and subsidiaries, are related companies, affiliates, and have more than close relationships with one another.

24.     On information and belief, Defendants, including along with other foreign and U.S.-based subsidiaries or agents (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Defendants) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, Defendants conduct business in the United States, including importing, distributing, and selling the Accused Products that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district.

25.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products with distributors and customers operating in and maintaining a significant business presence in the U.S., Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

26.     Defendants operate (and have operated) in agency with its respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide a distribution channel of infringing products within this District and the U.S. nationally. TCL and/or its respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail

partners, suppliers, and customers, purposefully direct (and has directed) the Accused Products into established distribution channels within this District and the U.S. nationally.

27.    On information and belief, TCL, including its respective U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. TCL and its U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the Accused Products that incorporate devices, systems, and processes that infringed the Asserted Patents in Texas and this District. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

28.    On information and belief, the Defendants share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and infringing product lines and products involving related technologies. On information and belief, Defendants operate (and have operated) as a single business entity and/or in concert with their respective affiliates, distributors, subsidiaries, suppliers, retail partners, customers, and/or agents to

manufacture, sell, offer to sell, import, market, advertise, and/or otherwise promote the Accused Products in the United States, including in the State of Texas generally and this District in particular. *See, e.g.*, https://us.tcl.com/pages/our-story ("TCL is vertically integrated, which means we make our own stuff. What's that mean to you? Being able to manufacture the most expensive parts of a product ourselves means you'll enjoy quality, technology, and value, you never thought possible."); *see also id.* ("we create innovative display technologies and develop new production techniques for phones and TVs."); *see also id.* ("We … produce our own boards … . That is all to ensure consistent performance and quality.")

29.    On information and belief, Defendants and their U.S. and foreign subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

30.    Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products by and/or to affiliates, distributors, subsidiaries, suppliers, business partners, retail partners, customers, and/or agents, Defendants are operating in (and have operated in) and maintaining (and maintained) a significant business presence in the U.S. and/or through its U.S. subsidiaries or agents, Defendants have done (and do) business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

31.    Plaintiff incorporates paragraphs 1 through 30 herein by reference.

32.    This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

33.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

34.      Venue is proper for Defendants in this District pursuant to 28 U.S.C. §§ 1391(c). Defendants are foreign entities and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

35.      This Court has general and specific personal jurisdiction over the Defendants pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) the Defendants have done and continue to do business in Texas and/or (ii) the Defendants have, directly and through intermediaries, distributers, agents, and/or others committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Products in Texas, and/or importing Accused Products into Texas, including by Internet sales and/or sales via business partners, retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein. Defendants have placed, and continue to place, infringing products into the stream of commerce, via established distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and District (including, as relevant, in the past), including: (A) conducting at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and/or imported, and services provided to Texas residents vicariously through and/or in concert with its respective alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

36.      In addition, Defendants have subsidiaries and employees in the United States.

37.     In addition, Defendants are aware that the Accused Products are shipped to, offered for sale, sold, and used in, the United States given that they obtain UL Solutions and FCC certifications for the Accused Products so that they comply with the laws and regulations of the United States For example, an Accused Product Lenovo ThinkBook includes Accused Product CSOT model no. MNF601EA1-1, which includes a UL Solutions mark indicating compliance with the laws and regulations of the United States:



In another example, an Accused Product the TCL 32S327 TV includes an FCC mark indicating compliance with the laws and regulations of the United States:



Also, given the long history of CSOT as one of the main suppliers of display components offered by TCL and incorporated in third party end user electronic devices, TCL has knowledge that it and third party customers have substantial operations in the United States, as well as substantial market share in the United States market for LCD displays; Defendants are well-aware that the Accused Products are destined for the United States and Texas (e.g., via the such entities' supply chains, distributers, retailers, etc.). Indeed, the U.S. market for the Accused Products is substantial:



38.     This Court has personal jurisdiction over each of the Defendants, directly or through agents, intermediaries, distributors, importers, business partners, customers, subsidiaries, and/or consumers. Through direction and control (including, as relevant, in the past) of such subsidiaries, affiliates, business partners, distributors, retail partners, agents, and/or customers, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over each of the Defendants would not offend traditional notions of fair play and substantial justice. Upon information and belief, Defendants compensate their U.S.-based subsidiaries and/or agents for their sales and/or technical support services in the United States. As such, Defendants have a direct financial interest in their U.S.-based subsidiaries and/or agents, and/or partners, distributers, or customers, and vice versa.

39.     Personal jurisdiction is proper because each of the Defendants has committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, *inter*

16

*alia*, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

40.    Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiff who resides in this District.

41.    In addition, Defendants have knowingly induced infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

42.    For example, the websites of Defendants and their U.S.-based subsidiaries advertise the type of components and Accused Products that are infringing in this case:



https://en.tclcsot.com/products/326.html; *see also* https://us.tcl.com/:



43.     Personal jurisdiction also exists specifically over Defendants because Defendants, directly or through affiliates, subsidiaries, business partners, agents, and/or intermediaries, transact business (or have transacted business) in this State or purposefully directed business at this State by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

44.     To the extent Defendants are not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over Defendants in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of the facts alleged in this Complaint.

45.     In addition, Defendants, directly or through affiliates, subsidiaries, agents, and/or intermediaries, have placed infringing products into the stream of commerce knowing they would be sold and used in Texas, and economically benefit from the retail sale of infringing products in this State, including in this District.

46.     Defendants have advertised its infringing products to customers in Texas and this District through its website.

47.     On information and belief, Defendants control (or have controlled) or otherwise direct (or directed) and authorizes (or authorized) all activities of their respective U.S.-based (or foreign-based with the knowledge that the Accused Products are directed to the United States and this District) agents and/or sales and/or distribution subsidiaries. Such directed and authorized activities include the U.S.-based (and/or foreign-based) subsidiaries' and/or agents having used, offered for sale, sold, and/or imported the Accused Products, their components, processes, and/or products containing the same that incorporated the fundamental technologies and claims of the Asserted Patents. Defendants' U.S.-based (and/or foreign-based) sales and/or distribution

18

subsidiaries and/or agents were authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, Defendants researched, designed, developed, and manufactured the Accused Products, and then directed their respective U.S.-based (and/or foreign-based) sales subsidiaries, distributers, business partners agents, and/or others to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Thus, Defendants conducted infringing activities, and Defendants' U.S.-based (and foreign-based) sales subsidiaries and/or distributers and/or agents and/or business partners conducted infringing activities on behalf of Defendants.

48.     On information and belief, Defendants' U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries' and/or agents' presence (including in the past) in the United States gave Defendants substantially the same business advantages that it would have enjoyed if Defendants conducted their business through its own offices or paid agents. Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or distributers and/or agents were authorized to import, distribute, sell, and offer for sale Defendants' products, including the Accused Products, as well as their components and processes related to the same, on behalf of Defendants. For example, Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or agents operated within Defendants' global network and supply chain of sales. In the U.S., including within the Eastern District of Texas, the Accused Products, as well as their components and processes related to the same, were imported, distributed, offered for sale, and/or sold.

49. Via Defendants' alter egos, agents, business partners, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers that maintained a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in Texas including within this District. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to customers in the U.S. may constitute an offer to sell under § 271(a)).

50. On information and belief, Defendants have placed infringing products and/or products that practiced infringing processes into the stream of commerce via established distribution channels comprising at least its subsidiaries, business partners, affiliates, distributors, and/or agents or customers, with the knowledge and/or intent that those products were imported, used, offered for sale, and sold in the United States and Texas, including in this District. As a result, Defendants have, vicariously through and/or in concert with alter egos, agents, intermediaries, distributors, affiliates, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District.

51. The minimum contacts test is satisfied because Defendants deliver products (*e.g.,* TFT-LCDs and/or LCMs and/or TVs comprising LCMs and/or TFT-LCDs) into the stream of commerce with the expectation that they will be purchased by consumers in Texas. *Beverly Hills*

*Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980)). For example, and on information and belief (and as provided for herein), Defendants import, and/or have imported and/or shipped infringing Accused Products into the United States through and with their respective U.S. subsidiaries and/or affiliates and/or agents and/or supply chain partners and/or customers. Defendants supply their Accused Products (*e.g.,* TFT-LCDs and/or LCMs and/or TVs, phones, and/or tablets comprising CSOT TFT-LCDs and/or LCMs) to their customers, subsidiaries, affiliates, agents, and/or distributors knowing that the CSOT TFT-LCDs and/or LCMS will be incorporated into accused downstream display products (*e.g.*, TVs, phones, tablets) and TCL TVs, phones and/or tablets that are offered for sale, sold, imported, and/or used by Defendants, their customers, Best Buy Walmart, and/or Amazon in the United States and this District. The Accused Products were (and are) directed to this District and were (and are) available for purchase in this District via retailers, such as Best Buy, Walmart, and Amazon. The lengthy and complex distribution chain does not insulate Defendants from suit in Texas.

52.     Defendants intentionally placed and place CSOT TFT-LCDs and/or LCMs in third party display products (e.g., ViewSonic and Lenovo products) and/or TCL display products (e.g., TVs, phones, and/or tablets) in a distribution chain flowing from Asia to the United States, Texas, and this District. For example, Defendants intentionally place the CSOT TFT-LCDs and/or LCMs and/or display products in a distribution or supply chain knowing that such Accused Products ultimately arrive in the United States market and this District through, at least, its direct and/or indirect customers' monitors, laptops, TVs, phones, and/or tablets as well as TCL monitors, phones, and/or tablets. Defendants, through their sales of TCL display products (e.g., TVs, phones, and/or tablets and/or CSOT TFT-LCDs and/or LCMs for application in downstream display

21

devices, such as TVs, monitors, laptops, phones and/or tablets knew (or should have reasonably known) the likely destination of the products, where Defendants' conduct and connections with Texas and this District were such that each of the Defendants should have reasonably anticipated being brought to court in this District. Indeed, Defendants' TFT-LCDs and or LCMs and the respective downstream display devices, including TCL TVs, laptops, and/or monitors, include a UL Solutions mark indicating compliance with the laws and regulations of the United States further evidencing that Defendants knew or should have known that its products were destined for the United States and this District.

53.     Moreover, Defendants are the assignee of a substantial number of United States patents and patent applications, including use of U.S. patent counsel to procure such patents in their name. Thus, Defendants sought out the United States market, evidenced by seeking patent protection in the United States.

54.     Also by way of example, and on information and belief, Defendants have (and have had) U.S. based (and/or foreign-based) employees that work in connection with the Accused Products.

55.     TCL, including CSOT, have and had a commercial relationship with significant players in the electronic display industry (e.g., ViewSonic and Lenovo), and TCL, including CSOT, access the Texas consumer-electronics market vis-à-vis that relationship. Given TCL's relationship with such entities, which are behemoths for display products in the United States market, jurisdiction in this Court is fair and reasonable. Furthermore, TCL accesses the Texas consumer-electronics market via TCL display products (e.g., TVs, phones, and/or tablets), such that jurisdiction in this Court is fair and reasonable for TCL.

56.     In the alternative, the Court has personal jurisdiction over each of the Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, each of the Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state and exercising jurisdiction over each of the Defendants is consistent with the U.S. Constitution. Exercising jurisdiction comports with due process given each of the Defendants' purposeful availment from the sales of TCL display products (e.g., TVs, phones, tablets) and third party display products (e.g., TVs, monitors, laptops, phones, tablets) incorporating CSOT's TFT-LCDs and/or LCMs sold in the Unites States and this District.

## **JOINDER**

57.     Plaintiff incorporates paragraphs 1 through 56 herein by reference.

58.     Joinder is proper under at least Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299 at least because Defendants' infringing conduct alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, or portions thereof, and questions of fact common to all Defendants will arise in this action.

59.     As to the '347 patent and the '682 patent, the Accused Products comprising at least TCL phones and/or tablets implicate each of the named Defendants. Furthermore, the CSOT TFT-LCDs and LCMs are common to all Defendants' infringement of each of the Asserted Patents. Thus, on information and belief, each of the Defendants infringe the same Asserted Patents for having made, used, imported, offered for sale, and/or sold, and/or induced others to make, use, import, offer for sale, and sell CSOT TFT-LCDs or products containing CSOT TFT-LCDs. Thus, on information and belief, CSOT TFT-LCD technology is a common issue for each Defendants'

infringement of products containing CSOT TFT-LCDs, and the factual question of infringement related to CSOT TFT-LCDs will thus substantially overlap for all Defendants regarding such products.

60.     Further, on information and belief, there are common facts as to sales, importation, distribution, and marketing materials associated with the CSOT TFT-LCDs and the TCL display products containing the CSOT TFT-LCDs.

61.     Additionally, on information and belief, there are common facts as to the distribution, supply chain, knowledge, and inducement related to CSOT TFT-LCDs and the TCL display products containing CSOT TFT-LCDs destined to be sold, used, imported, offered for sale, and/or sold in the United States.

## COUNT I
### (Infringement of U.S. Patent No. 7,583,347)

62.     Plaintiff incorporates paragraphs 1 through 61 herein by reference.

63.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

64.     Plaintiff is the owner of the '347 patent with all substantial rights to the '347 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

65.     The '347 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

66.     Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '347 patent in this District and elsewhere in Texas and the United States.

67.     Defendants directly infringed the '347 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their

24

components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '347 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '347 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '347 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '347 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '347 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '347 patent under 35

25

U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

68. Furthermore, TCL Industries directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

69. Furthermore, TCL Electronics directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or

importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

70.    Additionally, TCL Communication directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

71.    Additionally, TCL Communication Tech. directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates,

27

including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

72.   Additionally, TCT Mobile directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

28

73.     Additionally, Huizhou TCL Mobile directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

74.     Additionally, TCL Mobile HK directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL

29

Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

75.    Furthermore, TCL Technology directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

76.    Additionally, Wuhan CSOT directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

77.     Additionally, Huizhou CSOT directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

78.     Additionally, TCL CSOT directly infringed the '347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates

31

or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

79.    For example, Defendants infringed claim 1 of the '347 patent. The products accused of infringing the '347 patent comprise a liquid crystal display. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each comprises a liquid crystal display:



In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no. BLU6702-1, such that each comprises a liquid crystal display device:



80.      The products accused of infringing the '347 patent comprise a liquid crystal panel including an array substrate having an upper surface on which a common electrode, a pixel electrode, a scanning signal line, a video signal line, and a semiconductor switching device are formed, an opposing substrate disposed so as to be opposite to the upper surface of the array substrate, and a liquid crystal layer disposed between the array substrate and the opposing substrate. For example, an examination of TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:





In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:





81. The products accused of infringing the '347 patent comprise a reflecting face formed below the liquid crystal panel, wherein a light reflected on the reflecting face is transmitted through the liquid crystal panel. The configuration of the products accused of infringing the '347 patent is such that light reflected on the reflecting face is transmitted through the liquid crystal panel (the reflecting face is beneath the diffuser in the below illustration). For example, an examination of TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



82.     The products accused of infringing the '347 patent are configured such that at least one electrode of the common electrode and the pixel electrode is constituted by an electrode

36

portion and a wiring portion. For example, the pixel electrode is constituted by an electrode portion

and a wiring portion. For example, an examination of TCL's TV model no. 32S327 includes

CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:



83.     The products accused of infringing the '347 patent are configured such that the electrode portion is at least partially constituted by a transparent electric conductor. For example, the pixel electrode portion is at least partially constituted by a transparent electric conductor. For example, an examination of TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



84.     The products accused of infringing the '347 patent are configured such that the pixel electrode portion is formed in a layer separated by an insulating layer from a layer in which the scanning signal line is formed, and the pixel wiring portion is formed in the layer in which the scanning signal line is formed. For example, an examination of TCL's TV model no. 32S327

38

includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:





Scanning signal line    Pixel wiring portion

85.    At a minimum, each of the Defendants has known about the '347 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside IP LLC ("Parkside") was the patent owner of the '347 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '347 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '347 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '347 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on

information and belief, each of the other named Defendants were on notice of the '347 patent from at least the foregoing dates that TCL CSOT was on notice of the '347 patent as a result of receiving notice from TCL CSOT.[2]

86.     At a minimum, each of the Defendants has known about the '347 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '347 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '347 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '347 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants

---

[2] *See e.g., Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:23-cv-00495-JRG-RSP, 2025 U.S. Dist. LEXIS 206502, at *28-30 (E.D. Tex. Oct. 3, 2025) ("where there is a close relationship between a non-defendant third party and a defendant, giving notice to the former can constitute notice to the latter, at least insofar as it creates a genuine dispute of material fact. … we are satisfied that SDC's relationship with the named Defendants here suffices, such that whether Plaintiff's notice to the former constitutes notice to Defendants is an issue that the trier of fact will resolve."); *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan of N. Am.*, No. 11-11039, 2012 U.S. Dist. LEXIS 117941, at *14 (E.D. Mich. Aug. 21, 2012) ("Defendants argue the sheer implausibility of an automotive supplier informing its customers that it is supplying infringing products to them. Without a fully developed factual record however, the court cannot conclude that it is unreasonable to infer that defendants Toyota and Nissan received pre-suit knowledge of the patents-in-suit from their suppliers. A reasonable inference can be made that a supplier of an accused infringing instrumentality, with direct notice of the patents-in-suit, discussed said patents and the likelihood of infringement of these patents with its customers. It is also a reasonable inference that a Japanese parent company, Honda Motor Company, which received NISTAC's letter concerning the patents-in-suit, would communicate with its United States subsidiary, American Honda, about these patents and potential infringement thereof.").

were on notice of the '347 patent from at least the foregoing dates that TCL Technology was on notice of the '347 patent as a result of receiving notice from TCL Technology.[3]

87.    Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

### INDIRECT INFRINGEMENT (35 U.S.C. §271(b))

88.    On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '347 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '347 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers,

---

[3] *See* FN 2, *supra.*

subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display

products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

89. On information and belief, despite having knowledge of the '347 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '347 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '347 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '347 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '347 patent in the United States.

90. Defendants' infringement of the '347 patent has been willful and with full knowledge of the '347 patent. Upon information and belief, despite having knowledge of the '347 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '347 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '347

44

patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

91.     Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

92.     On information and belief, the prior patent owners of the '347 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '347 patent.

## COUNT II
### (Infringement of U.S. Patent No. 7,414,682)

93.     Plaintiff incorporates paragraphs 1 through 92 herein by reference.

94.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

95.     Plaintiff is the owner of the '682 patent with all substantial rights to the '682 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

96.     The '682 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

## DIRECT INFRINGEMENT (35 U.S.C. §271(a))

97.     Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '682 patent in this District and elsewhere in Texas and the United States.

98.     Defendants directly infringed the '682 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '682 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '682 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '682 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '682 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell*

*Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '682 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

99.     Furthermore, TCL Industries directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to

control those entities' infringing acts and receives a direct financial benefit from their infringement.

100.   Furthermore, TCL Electronics directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

101.   Additionally, TCL Communication directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as

48

an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

102.    Additionally, TCL Communication Tech. directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Communication Tech. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Communication Tech. has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

103.    Additionally, TCT Mobile directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCT Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates

or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCT Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

104.   Additionally, Huizhou TCL Mobile directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou TCL Mobile is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou TCL Mobile has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

105.   Additionally, TCL Mobile HK directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL Mobile HK

is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL Mobile HK has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

106.    Furthermore, TCL Technology directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

107.    Additionally, Wuhan CSOT directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling,

51

and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

108.    Additionally, Huizhou CSOT directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

109.    Additionally, TCL CSOT directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement

of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

110.    Defendants infringed claim 7 of the '682 patent. The products accused of infringing the '682 patent comprise a liquid crystal display of transversal electric field type. For example, TCL's TV model no. 32S327 includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, such that each comprises a liquid crystal display of transversal electric field type:



In another example, TCL's phone model Alcatel 3V includes CSOT LCD/LCM model no. BLU6702-1, such that each comprises a liquid crystal display of transversal electric field type:



111.　The products accused of infringing the '682 patent comprise a liquid crystal panel in which liquid crystal is retained between a pair of substrates. For example, an examination of TCL's TV model no. 32S327, which includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:





counter substrate                Array substrate

In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:



Liquid crystal panel

counter substrate                Array substrate

112.    The products accused of infringing the '682 patent comprise a plurality of scanning

signal lines and a plurality of video signal lines formed so as to define a plurality of pixels in a

matrix on an inner surface of one of the pair of substrates. For example, an examination of TCL's

55

TV model no. 32S327, which includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



113.    The products accused of infringing the '682 patent comprise a pixel electrode and a common electrode formed opposite to each other in each pixel in a plan view. For example, an

examination of TCL's TV model no. 32S327, which includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



114.    The products accused of infringing the '682 patent are configured such that an image is displayed on the liquid crystal panel by inputting a video signal from the video signal line into the pixel electrode while sequentially selecting the pixel through the scanning signal line. For example, an examination of TCL's TV model no. 32S327, which includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:

## Liquid crystal panel



Video signal lines

Scanning signal lines

https://www.intechopen.com/books/new-developments-in-liquid-crystals/active-matrix-liquid-crystal-displays-operation-electronics-and-analog-circuits-design

## Array substrate



Scanning signal lines

Pixel electrode

Video signal lines

Pixels

In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model

Alcatel 3V demonstrates this:





https://www.intechopen.com/books/new-developments-in-liquid-crystals/active-matrix-liquid-crystal-displays-operation-electronics-and-analog-circuits-design



115.    The products accused of infringing the '682 patent are configured such that at least one of the scanning signal lines, the video signal lines, the pixel electrode, or the common electrode is at least partially constituted by a light-transmitting conductive layer and a light-non-transmitting conductive layer. For example, an examination of TCL's TV model no. 32S327, which includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates that the pixel electrode is at least partially constituted by a light-transmitting conductive layer and a light-non-transmitting conductive layer:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



116.    The products accused of infringing the '682 patent are configured such that a width of the light-transmitting conductive layer is wider than a width of the light-non-transmitting layer. For example, an examination of TCL's TV model no. 32S327, which includes CSOT's LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 demonstrates this:



In another example, CSOT LCD/LCM model no. BLU6702-1 included in TCL's phone model Alcatel 3V demonstrates this:



117.    At a minimum, each of the Defendants has known about the '682 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '682 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '682 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '682 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '682 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '682 patent from

at least the foregoing dates that TCL CSOT was on notice of the '682 patent as a result of receiving notice from TCL CSOT.[4]

118.    At a minimum, each of the Defendants has known about the '682 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '682 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '682 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '682 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '682 patent from at least the foregoing dates that TCL Technology was on notice of the '682 patent as a result of receiving notice from TCL Technology.[5]

119.    Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or

---

[4] *See* FN 2, *supra.*
[5] *See* FN 2, *supra.*

companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

## INDIRECT INFRINGEMENT (35 U.S.C. §271(b))

120.    On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '682 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '682 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to

these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., TVs, laptops, monitors, tables, and/or mobile phones), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., Lenovo and ViewSonic) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

65

121.    On information and belief, despite having knowledge of the '682 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '682 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '682 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '682 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '682 patent in the United States.

122.    Defendants' infringement of the '682 patent has been willful and with full knowledge of the '682 patent. Upon information and belief, despite having knowledge of the '682 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '682 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '682 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

123.    Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates

66

Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

124. On information and belief, the prior patent owners of the '682 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '682 patent.

## COUNT III
### (Infringement of U.S. Patent No. 7,995,047)

125. Plaintiff incorporates paragraphs 1 through 124 herein by reference.

126. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

127. Plaintiff is the owner of the '047 patent with all substantial rights to the '047 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

128. The '047 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

129. Defendants TCL Industries, TCL Electronics, TCL Technology, Wuhan CSOT, Huizhou CSOT, and TCL CSOT (collectively, the "'047 Defendants") have infringed and continue to infringe literally, and/or under the Doctrine of Equivalents, one or more claims of the '047 patent in this District and elsewhere in Texas and the United States.

130. The '047 Defendants have infringed and continue to infringe the '047 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate

the fundamental technologies and claims of the '047 patent. For example, the '047 Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '047 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '047 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each '047 Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the '047 Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the '047 Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, the '047 Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '047 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the '047 Defendants directly infringed the '047 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '047 patent under 35 U.S.C. § 271(a) by having made, used,

68

tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, the '047 Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, the '047 Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

131. Furthermore, TCL Industries directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

132. Furthermore, TCL Electronics directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such

entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

133.    Furthermore, TCL Technology directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

134.    Additionally, Wuhan CSOT directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or

70

affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

135.    Additionally, Huizhou CSOT directly infringed the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

136.    Additionally, TCL CSOT directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

137.    For example, the '047 Defendants infringe claim 1 of the '047 patent. The products accused of infringing the '047 patent comprise a current driving device. For example, the ViewSonic VX2718 includes CSOT's LCM model no. LMF270CSDX E0138, which includes a power supply board, such that each comprises a current driving device:

Viewsonic VX2718 Monitor    Driver PCB, Product labels



Back of LCM

138.    The products accused of infringing the '047 patent comprise a first voltage supply source for supplying a first voltage. An examination of the power supply board included in the CSOT LCM model no. LMF270CSDX E0138 demonstrates this:





139.    The products accused of infringing the '047 patent comprise a first current supply source for supplying a first electric current. An examination of the power supply board included in the CSOT LCM model no. LMF270CSDX E0138 demonstrates this:



first current supply source

140.     The products accused of infringing the '047 patent comprise a plurality of output terminals. An examination of the power supply board included in the CSOT LCM model no. LMF270CSDX E0138 demonstrates this:



plurality of output terminals

74



141.    The products accused of infringing the '047 patent comprise a plurality of current output circuits for outputting an electric current in accordance with said first electric current, each of said current output circuits comprising a current-voltage converting circuit, a voltage-current converting circuit, a voltage holding circuit having a terminal being connected to a reference voltage different from the first voltage, and at least one current output terminal. An examination of the power supply board comprising a MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 demonstrates the presence of a plurality of current output circuits for outputting an electric current in accordance with said first electric current:



142.    The products accused of infringing the '047 patent are configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit. On information and belief, the MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 is configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of the LCM, such that the MP3398A chipset is configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit:



**MP3398A**

Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

143.    The products accused of infringing the '047 patent are configured such that each of the current output circuits comprise a voltage holding circuit having a terminal being connected to a reference voltage different from the first voltage, and at least one current output terminal. On

information and belief, the MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 is configured such that each of the current output circuits comprise a voltage holding circuit having a terminal being connected to a reference voltage different from the first voltage, and at least one current output terminal. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of the LCM, such that the MP3398A chipset is configured such that each of the current output circuits comprise a voltage holding circuit having a terminal being connected to a reference voltage different from the first voltage, and at least one current output terminal:



144.    The products accused of infringing the '047 patent are configured such that each of said current output circuits operates in three operation modes including a voltage supply mode, a current supply mode, and a current output mode. On information and belief, the MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 is configured such that each of the circuits operate in three operation modes, including a voltage supply mode, a current supply mode, and a current output mode. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of the LCM, such that the MP3398A chipset (as demonstrated above and below) is configured such that each of the circuits operate in three operation modes, including a voltage supply mode, a current supply mode, and a current output mode:



**FEATURES**

- 4-String, Max 350mA/String WLED Driver
- 5V to 28V Input Voltage Range
- 2.5% Current Matching Accuracy Between Strings

**MP3398A**

Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

145.    The products accused of infringing the '047 patent are configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied to another terminal of said voltage holding circuit. On information and belief, the MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 is configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied to another terminal of said voltage holding circuit. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that the MP3398A chipset is configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied to another terminal of said voltage holding circuit (even if the first voltage passes through other components first).  Furthermore, the MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that the MP3398A chipset is configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied (e.g., sensed and controlled) to another terminal of said voltage holding circuit:

78



First voltage supply source

Another terminal of voltage holding circuit

Voltage holding circuit

Current output circuits

*MP3398A*
**Step up, 4 strings, Max. 350mA/string**
**Analog and PWM dimming, White LED Controller**



First voltage

sensed and controlled

*MP3398A*
**Step up, 4 strings, Max. 350mA/string**
**Analog and PWM dimming, White LED Controller**

146. The products accused of infringing the '047 patent are configured such that under said current supply mode, each of said current output circuits receives said first current from said first current supply source, and generates a second voltage by said current-voltage converting circuit, and the first current is supplied to said another terminal of said voltage holding circuit. On information and belief, the MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 is configured such that under said current supply mode, each of said current output circuits receives said first current from said first current supply source, and generates a second voltage by said current-voltage converting circuit, and the first current is supplied to said

79

another terminal of said voltage holding circuit. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of the LCM, such that the MP3398A chipset is configured such that under said current supply mode, each of said current output circuits receives said first current from said first current supply source, and generates a second voltage by said current-voltage converting circuit, and the first current is supplied to said another terminal of said voltage holding circuit:



**MP3398A**
**Step up, 4 strings, Max. 350mA/string**
**Analog and PWM dimming, White LED Controller**

147.    The products accused of infringing the '047 patent are configured such that under said current output mode, each of said current output circuits outputs an output current according to said voltage held in said voltage holding circuit by said voltage-current converting circuit. On information and belief, the MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 is configured such that under said current output mode, each of said current output circuits outputs an output current according to said voltage held in said voltage holding circuit by said voltage-current converting circuit. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that the MP3398A chipset is configured such that under said current output mode, each of said current output circuits outputs an output current according to said voltage held in said voltage holding circuit by said voltage-current converting circuit:

80



**MP3398A**
Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

148.    On information and belief, TCL's TV model no. 32S327 includes the CSOT LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, which infringes at least claim 1 of the '047 patent in substantially the same manner as the CSOT LCM model no. LMF270CSDX E0138 comprising the MP3398A chipset.  However, the relevant chipset in the CSOT LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 does not have any corresponding public disclosure of its data sheet as to its structure or functionality. On information and belief, the relevant chipset in the CSOT LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 is configured to perform the same functionality as the MP3398A chipset as to claim 1 of the '047 patent because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM.

149.    At a minimum, each of the Defendants has known about the '047 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '047 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First

TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '047 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '047 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '047 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '047 patent from at least the foregoing dates that TCL CSOT was on notice of the '047 patent as a result of receiving notice from TCL CSOT.[6]

150.    At a minimum, each of the Defendants has known about the '047 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '047 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '047 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '047 patent

_____

[6] *See* FN 2, *supra.*

and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '047 patent from at least the foregoing dates that TCL Technology was on notice of the '047 patent as a result of receiving notice from TCL Technology.[7]

151.     Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

### INDIRECT INFRINGEMENT (35 U.S.C. §271(b))

152.     On information and belief, since at least the above-mentioned dates when the '047 Defendants were on notice of its infringement, the '047 Defendants have actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, testing outfits, and/or

---

[7] *See* FN 2, *supra.*

consumers to directly infringe one or more claims of the '047 patent to use, offer for sale, sell, use, and/or import the Accused Products. Since at least the notice provided on the above-mentioned dates, the '047 Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '047 patent. the '047 Defendants intend to cause, and has taken affirmative steps to induce infringement by its distributors, importers, testing outfits, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, the '047 Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking its Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, the '047 Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused power supply boards that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities

84

to streamline the UL Solutions certification process for such end products if the components have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/.

153. On information and belief, despite having knowledge of the '047 patent and its infringement, the '047 Defendants specifically intended for others to import and sell products accused of infringing the '047 patent. For example, the '047 Defendants specifically intended for its U.S.-based subsidiaries or customers to import and sell products accused of infringing the '047 patent. On information and belief, the '047 Defendants instruct and encourage the importers to import and/or sell products accused of infringing the '047 patent. On information and belief, the purchase and sale agreements between the '047 Defendants and the importers provide such instruction and/or encouragement. Further, on information and belief, the '047 Defendants' U.S.-based subsidiaries exist for inter alia, the purpose of importing and selling products accused of infringing the '047 patent in the United States.

154. The '047 Defendants' infringement of the '047 patent has been willful and with full knowledge of the '047 patent. Upon information and belief, despite having knowledge of the '047 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '047 patent, the '047 Defendants have nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. The '047 Defendants' infringing activities relative to the '047 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

155. Plaintiff has been damaged as a result of the '047 Defendants' infringing conduct described in this Count. The '047 Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for the '047 Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

156. On information and belief, the prior patent owners of the '047 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for the '047 Defendants' infringements of the '047 patent.

**COUNT IV**
**(Infringement of U.S. Patent No. 8,093,830)**

157. Plaintiff incorporates paragraphs 1 through 156 herein by reference.

158. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

159. Plaintiff is the owner of the '830 patent with all substantial rights to the '830 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

160. The '830 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

161. Defendants TCL Industries, TCL Electronics, TCL Technology, Wuhan CSOT, Huizhou CSOT, and TCL CSOT (collectively, the "'830 Defendants") have infringed and continue to infringe literally, and/or under the Doctrine of Equivalents, one or more claims of the '830 patent in this District and elsewhere in Texas and the United States.

162.   The '830 Defendants have infringed and continue to infringe the '830 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '830 patent. For example, the '830 Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '830 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '830 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each '830 Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the '830 Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the '830 Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, the '830 Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '830 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the '830 Defendants directly infringed the '830 patent through direct involvement in the activities of their respective subsidiaries, including by selling

87

and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '830 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, the '830 Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, the '830 Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, TCL, its subsidiaries, and its related companies are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

163.    Furthermore, TCL Industries directly infringed and continues to infringe the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Industries is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Industries has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

88

164.     Furthermore, TCL Electronics directly infringed and continues to infringe the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Electronics is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Electronics has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

165.     Furthermore, TCL Technology directly infringed and continues to infringe the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, TCL Technology is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and TCL Technology has (and had) the

right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

166.    Additionally, Wuhan CSOT directly infringed and continues to infringe the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Wuhan CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Wuhan CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

167.    Additionally, Huizhou CSOT directly infringed the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Huizhou CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on

90

information and belief, such entities are (and have been) essentially the same company, and Huizhou CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

168. Additionally, TCL CSOT directly infringed and continues to infringe the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, TCL CSOT is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and TCL CSOT has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

169. For example, the '830 Defendants infringe claim 1 of the '830 patent. The products accused of infringing the '830 patent comprise a semiconductor light source driving apparatus. For example, the ViewSonic VX2718 monitor includes CSOT LCM model no. LMF270CSDX E0138, such that each comprise a semiconductor light source driving apparatus:

## Viewsonic VX2718 Monitor

## Driver PCB, Product label





CSOT LCM w/ PS board





semiconductor light source in CSOT LCM



**MP3398A**
Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

170.    The products accused of infringing the '830 patent comprise a semiconductor light source that is driven by a current. An examination of the semiconductor light source and the power supply board included in the CSOT LCM model no. LMF270CSDX E0138 demonstrates this:



171.    The products accused of infringing the '830 patent comprise a voltage source that drives the semiconductor light source. On information and belief, the MP3398A chipset included in the CSOT LCM model no. LMF270CSDX E0138 is configured such that each comprise a voltage source that drives the semiconductor light source. For example and on information and belief, the MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that the MP3398A chipset is configured such that each comprise a voltage source that drives the semiconductor light source:



semiconductor light source in CSOT LCM



**MP3398A**
Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

172.    The products accused of infringing the '830 patent comprise an output voltage controlling section that controls a drive current value for driving the semiconductor light source by controlling an output voltage of the voltage source. For example and on information and belief, the MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that the MP3398A chipset is configured such that it comprises an output voltage controlling section that drive a plurality of channels of LEDs of the backlight of an LCM that are configured such that it controls an output voltage of a voltage source, thereby controlling a drive current value for driving the semiconductor light source. The output voltage controlling section controls (via control logic) an output voltage of a voltage source, (with a gate and isense terminals as a part of a boost convertor) thereby controlling a drive current value for driving the semiconductor light source.

94



173.    The products accused of infringing the '830 patent comprise an output current

detecting section that detects an output current of the semiconductor light source. The MP3398A

chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that it is comprises

an output current detecting section that detects an output current of the semiconductor light source:

95



**MP3398A**
Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

174.    The products accused of infringing the '830 patent comprise a current command section that specifies a reference value of a drive current which is applied to the semiconductor light source. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that the MP3398A chipset comprises a current command section that specifies a reference value of a drive current which is applied to the semiconductor light source:



**MP3398A**
Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

175.    The products accused of infringing the '830 patent comprise a current comparing section that compares the output current detected by the output current detecting section and the reference value specified by the current command section. The MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that it comprises a current comparing section

96

that compares the output current detected by the output current detecting section and the reference

value specified by the current command section:



176. The products accused of infringing the '830 patent comprise an impedance

detecting section that detects an impedance of the semiconductor light source. The MP3398A

chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that the MP3398A

chipset comprises an impedance detecting section that detects an impedance of the semiconductor

light source:



177. The products accused of infringing the '830 patent are configured such that the

output voltage controlling section controls the output voltage of the voltage source based on an

output of the current comparing section and an output of the impedance detecting section. The

MP3398A chipset drives a plurality of channels of LEDs of the backlight of an LCM, such that

the MP3398A chipset is configured such that the output voltage controlling section controls the

output voltage of the voltage source based on an output of the current comparing section and an

output of the impedance detecting section. For example, the output voltage controlling section

controls the boost convertor as described earlier to adjust the output voltage and current (based

upon various outputs):



**MP3398A**
Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller



**MP3398A**
Step up, 4 strings, Max. 350mA/string
Analog and PWM dimming, White LED Controller

178.    On information and belief, TCL's TV model no. 32S327 includes the CSOT

LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979, which infringes at least claim 1

of the '830 patent in substantially the same manner as the CSOT LCM model no. LMF270CSDX E0138 comprising the MP3398A chipset.  However, the relevant chipset in the CSOT LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 does not have any corresponding public disclosure of its data sheet regarding its structure or functionality. On information and belief, the relevant chipset in the CSOT LCM/LCD part no. LVF320NDEL KJ9W01 V3 40904-000979 is configured to perform the same functionality as the MP3398A chipset as to at least claim 1 of the '830 patent because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM.

179.    At a minimum, each of the Defendants has known about the '830 patent since at least July 29, 2020, when TCL received notice of their infringement. On July 29, 2020, Parkside was the patent owner of the '830 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent a first email, including a first attached letter, (collectively, the "First TCL Notice Letter") to TCL CSOT on July 29, 2020 providing notice from Parkside of TCL's infringement of the '830 patent. The First TCL Notice Letter informed TCL CSOT together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '830 patent via Company's making, using, offering to sell, selling and/or importing LCD displays, such as ST3151A05-8 (a CSOT TFT-LCD), and/or devices that include LCD displays. Furthermore, the First TCL Notice Letter stated that Parkside sought to license the '830 patent and other patents in its portfolio to abate the Company's infringement. The First TCL Notice Letter was addressed to Jin Du, Legal Head for TCL CSOT, at jin.du@tcl.com. On information and belief, TCL CSOT is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on

information and belief, each of the other named Defendants were on notice of the '830 patent from at least the foregoing dates that TCL CSOT was on notice of the '830 patent as a result of receiving notice from TCL CSOT.[8]

180.    At a minimum, each of the Defendants has known about the '830 patent since at least July 29, 2020, when TCL received a second notice of their infringement from Parkside's licensing agent via a second email, including a second attached letter, (collectively, the "Second TCL Notice Letter") to TCL Technology on July 29, 2020 providing notice from Parkside of TCL's infringement of the '830 patent. The Second TCL Notice Letter informed TCL Technology together with its affiliates and subsidiaries (collectively the "Company") of Company's infringing activity of the '830 patent via Company's making, using, offering to sell, selling and/or importing LCD displays and/or devices, such as the TCL TV model no. S325 that include LCD displays. Furthermore, the Second TCL Notice Letter stated that Parkside sought to license the '830 patent and other patents in its portfolio to abate the Company's infringement. The Second TCL Notice Letter was addressed to Jin Yang, Vice President/Group General Counsel, and Jin Du at jin.du@tcl.com. On information and belief, TCL Technology is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants were on notice of the '830 patent from at least the foregoing dates that TCL Technology was on notice of the '830 patent as a result of receiving notice from TCL Technology.[9]

181.    Further, on information and belief, TCL's conduct before the United States Patent and Trademark Office and foreign offices, suggest that they were aware of the '830 patent prior to

---

[8] *See* FN 2, *supra.*
[9] *See* FN 2, *supra.*

100

receiving any letters. For example, in prosecuting Chinese Patent No. CN103606354B, TCL CSOT has known of the '830 patent.

182. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

183. On information and belief, since at least the above-mentioned dates when the '830 Defendants were on notice of its infringement, the '830 Defendants have actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '830 patent to use, offer for sale, sell, use, and/or import the Accused Products. Since at least the notice provided on the above-mentioned dates, the '830 Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '830 patent. The '830 Defendants intend to cause, and has taken affirmative steps to induce infringement by its distributors, importers, testing outfits, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that

promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, the '830 Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking its Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, the '830 Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused power supply boards and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, monitors, laptops, tablets, mobile phones) because it allows for such entities to streamline the UL Solutions certification process for such end products if the components have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/.

184. On information and belief, despite having knowledge of the '830 patent and its infringement, the '830 Defendants specifically intended for others to import and sell products accused of infringing the '830 patent. For example, the '830 Defendants specifically intended for

its U.S.-based subsidiaries or customers to import and sell products accused of infringing the '830 patent. On information and belief, the '830 Defendants instruct and encourage the importers to import and/or sell products accused of infringing the '830 patent. On information and belief, the purchase and sale agreements between the '830 Defendants and the importers provide such instruction and/or encouragement. Further, on information and belief, the '830 Defendants' U.S.-based subsidiaries exist for inter alia, the purpose of importing and selling products accused of infringing the '830 patent in the United States.

185. The '830 Defendants' infringement of the '830 patent has been willful and with full knowledge of the '830 patent. Upon information and belief, despite having knowledge of the '830 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '830 patent, the '830 Defendants' have nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. The '830 Defendants' infringing activities relative to the '830 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

186. Plaintiff has been damaged as a result of the '830 Defendants' infringing conduct described in this Count. The '830 Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

187. On information and belief, the prior patent owners of the '830 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore,

Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for the '830 Defendants' infringements of the '830 patent.

## CONCLUSION

188.    Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of the Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

189.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendants and that the Court grant Plaintiff the following relief:

1. A judgment that Defendants has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendants;

104

3. A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4. A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5. A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6. Such other and further relief as the Court deems just and equitable.

Dated: March 27, 2026

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Justin Kimble
Texas Bar No. 24036909
T. William Kennedy Jr.
Texas Bar No. 24055771
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 North Harwood Street
Suite 250
Dallas, TX 75201
Tel: (214) 446-4950
pat@nelbum.com
justin@nelbum.com
bill@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 806-3808
murphy@nelbum.com

Attorneys for Plaintiff
**BISHOP DISPLAY TECH LLC**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on March 27, 2026.

*/s/ Patrick J. Conroy*
Patrick J. Conroy
